IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03204-CMA-KLM

JESUS HALL,

      Plaintiff,

v.

J. BROWN, RN,
DR. ALLRED,
MCDERMOT, Health Admin,
HAVER, Off, and
UNITED STATES OF AMERICA,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Motion to Dismiss** [#55][1] (the

"Motion").  Plaintiff, who is proceeding pro se,[2] filed a Response [#60] in opposition to the

Motion, and Defendants filed a Reply [#61].  The Motion is thus ripe for review.  Pursuant

to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion is referred to this

Court for recommendation [#56].  Having reviewed the entire case file and being sufficiently

---

[1]  "[#55]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

[2]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

advised, the Court **RECOMMENDS** that the Motion [#55] be **GRANTED**.

## I.  Summary of the Case

Plaintiff is presently an inmate at the United States Penitentiary–High Security in Florence, Colorado ("USP Florence").   *Third Am. Compl.* [#51] at 2.   Plaintiff brings this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to address the medical care he received while incarcerated there.  *Id.* at 5.  Plaintiff alleges the facts set forth below.

On November 25, 2012, Plaintiff asked Defendant Haver, who was a Senior Officer at USP Florence, about receiving his daily medication, which consisted of 1800 milligrams of Gabapentin.  *Id.* at 7, 8.   Plaintiff alleges that Defendant Haver responded "in a threatening manner" that Plaintiff would not receive his medication if he asked for it again. *Id.* at 8.  Plaintiff responded that he had only asked because he was in pain.  *Id.*

Later that day, Defendant Haver and Defendant J. Brown ("Brown"), who was a Registered Nurse ("RN") at USP Florence, began conducting rounds to pass out prescribed medication to inmates located in Plaintiff's housing unit.  *Id.* at 7.   At about 3:45 p.m., Defendants Brown and Haver stopped at Plaintiff's cell to give him his medication.  *Id.* Defendant Brown gave it to him, nodded her head to signify that Plaintiff had properly taken the medication, and moved away toward the next cell.  *Id.* at 8.  Defendant Haver, however, positioned himself at the side of Plaintiff's cell door and said that Plaintiff had not taken his medication.  *Id.* Defendant Brown returned from the next inmate's cell and ordered Plaintiff to give her the cup that Plaintiff had filled with coffee to wash down "the extremely harsh

taste of the crushed Gabapentin."[3] *Id.* at 9.  Plaintiff handed her the empty cup, after which Defendant Brown said "in a threatening manner" that Plaintiff would never see his medication again.   *Id.*   Plaintiff asserts that Defendant Brown had a reputation for discontinuing inmates' medications "for the slightest reason[s]," such as if she did not like a particular inmate or felt that a particular inmate should not be receiving the medication he was prescribed.  *Id.* at 10.  Plaintiff states that Defendant Haver knew of Defendant Brown's propensity and therefore lied and manipulated her into having Plaintiff's medication stopped as harassment and in retaliation for past unspecified disagreements between Defendant Haver and Plaintiff.  *Id.*

The next day, November 26, 2012, Nurse Thompson,[4] who is not a defendant in this matter, was passing out medication to inmates.  *Id.*  After Plaintiff failed to receive his medication in both the morning and the evening, he asked Nurse Thompson why he was not receiving it.  *Id.*  Nurse Thompson responded that Defendant Brown had discontinued his medication.  *Id.*  Plaintiff tried to tell Nurse Thompson that Defendant Brown did not have the authority to stop his medication and that he was "in excruciating or unbearable pain" and needed his medication.  *Id.* at 10-11.  Nurse Thompson replied that he could not override the decisions of Defendant Brown and Defendant Allred, a physician at USP Florence who was responsible for the medical health of all inmates at the facility.  *Id.* at 2-3, 11.

---

[3]  Plaintiff states that there was a general policy requiring pills to be crushed before administration to inmates.  *Third Am. Compl.* [#51] at 9.

[4]  Plaintiff first refers to Thompson as a "Nurse" and at other times as a "PA."  For the sake of consistency, the Court uses "Nurse Thompson" throughout this document, as the distinction is not material to any legal issue addressed herein.

The following day, November 27, 2012, Plaintiff filed a medical request with Defendant Allred and Defendant Lisa McDermott ("McDermott"), the Assistant Health Services Administrator for USP Florence.  *Id.* at 11; *see also Motion* [#55] at 2.  The request stated that he was "in extreme pain" because of the discontinuation of his medication, that he was suffering from sleep deprivation, and that he was "a chronic care patient."  *Third Am. Compl.* [#51] at 11.  He further stated that he was suffering from severe electric shocks, aching eyes, severe headaches, and an "inability to use the limited motion of [his] left hand, which was almost left totally paralyzed from a tragic personal experience."  *Id.*  Plaintiff asserts that these conditions had been medically documented and were the reason why he had been prescribed Gabapentin.  *Id.* at 11, 12 (stating that the "Gabapentin is critical to the limited function of Plaintiff Hall's range of motion from the paralysis, and the other discomforts Plaintiff Hall experiences [as] listed herein").

On November 28, 2012, Plaintiff "made a formal appeal" to Warden Daniels and Defendant McDermott during their making of rounds in Plaintiff's housing unit.  *Id.* at 12. Plaintiff handed both officials a written request detailing his troubles and asking for their intervention.  *Id.* at 12-13.  Plaintiff included the fact that his nerve condition had been previously diagnosed by a Dr. Rice in 2010 at USP Lewisburg.  *Id.* at 13.  Plaintiff also orally informed Warden Daniels and Defendant McDermott of his problem, to which they responded that there was nothing they could do for him.  *Id.*  Plaintiff replied that "it would be unprofessional, unprecedented, improper, and absurd to abruptly discontinue Plaintiff's medication without reviewing [his] medical files/history," without considering the damage being caused to Plaintiff, without prescribing a lesser medication, and without considering the findings of a Dr. Edinger and a Dr. Pigos of USP Lewisburg regarding Plaintiff's brachial

-4-

plexus injury.  *Id.* at 13-14.  When Plaintiff requested a review of Defendant Brown and Defendant Allred's decision, Warden Daniels and Defendant McDermott said that they would not go against the decision that had been made.  *Id.* at 14.

On December 1, 2012, Plaintiff stopped Nurse Thompson as he did his rounds passing out medication to inmates.  *Id.*  Plaintiff said he was "in excruciating pain," to which Nurse Thompson responded that he agreed that someone with Plaintiff's injuries should not have his medication discontinued without some form of treatment.  *Id.*  Nurse Thompson promised to send an e-mail to Defendants Allred and McDermott about Plaintiff's condition.  *Id.* at 15.  On December 2, 2012, Nurse Thompson confirmed to Plaintiff that he had e-mailed Defendant Allred.  *Id.*

On December 4, 2012, Plaintiff again "formally" appealed to Defendant McDermott about his pain and failure to receive medication.  *Id.*  Defendant McDermott told Plaintiff: "Hall, you have $58.00 in your account, and PA Cink informed me you should buy over the counter medication from the institutional commissary store list."  *Id.*  Plaintiff responded that a review of his medical records would demonstrate that any medications less strong than what had been prescribed would have no effect on his pain.  *Id.* at 15-16.  Defendant McDermott then walked away from Plaintiff's cell while replying, "You'll get your chance to talk to Allred."  *Id.* at 16.  Plaintiff drafted his initial Complaint in this matter the same day, and it was formally filed with the Court on December 6, 2012.  *See Compl.* [#1].

On December 5, 2012, Plaintiff saw Defendant Allred for an unrelated matter, at which time Defendant Allred stated in front of Plaintiff and an escort, Correctional Officer Daugherty, that he had stopped Plaintiff's medication without first reviewing Plaintiff's medical record.  *Third Am. Compl.* [#51] at 16.  That same day, PA Cink told Plaintiff that

he could not override Defendant Allred's decision to discontinue Plaintiff's normal medication, but said that he could prescribe to Plaintiff "a self carry weaker pain medication." *Id.* at 16-17.

On December 6, 2012, Nurse Neil made the medication rounds in Plaintiff's cell block. *Id.* at 17. She stopped at Plaintiff's cell and gave him 500 mg of Keppar, which PA Cink had newly prescribed. *Id.* Plaintiff indicated that his pain was getting progressively worse. *Id.* That evening, Plaintiff "formally" appealed to Lieutenant Lozano, telling him that he was "sustaining egregious pain and suffering" and that he had not been treated since November 25, 2012. *Id.* Plaintiff asked Lieutenant Lozano to ask Nurse Neil to give him Motrin or something similar to relieve Plaintiff's pain so he could sleep through the night, since the Keppar was ineffective in reducing Plaintiff's pain level. *Id.* at 17-18. Lieutenant Lozano left but returned less than an hour later and told Plaintiff he would have to wait until morning. *Id.* at 18.

On the evening of December 8, 2012, Plaintiff appealed "formally" to PA Cink to put Plaintiff back on the Gabapentin because the Keppar prescription was not helping and actually seemed to be making Plaintiff's condition worse. *Id.* at 18. PA Cink informed Plaintiff that he had done all that he could and that only Defendant Allred could provide Plaintiff with Gabapentin. *Id.*

On December 9, 2012, Plaintiff handed Defendant Brown a sick-call request, telling her of his pain and suffering and that his condition seemed to be getting worse. *Id.* at 18-19. Defendant Brown replied, "You will never see your medicine again, as long as I have a say so." *Id.* at 19.

On or around December 13, 2012, Plaintiff filed a grievance concerning Defendant

Allred's failure "to return any disposition to my written complaints/request, filed 11/27/12."
*Id.* Defendant Allred responded to the grievance, stating "I discontinued the meds.  I
reviewed Nurse Brown and Officer Haver['s] reports and I made the final decision to adjust
your treatment.  Your pain condition does not place you in imminent danger (but only an
uncomfortable position).  The medication(s) you were on are frequently abused by inmates,
and any effort that deviates from pill-line procedures is considered an attempt to divert, and
grounds for discontinuation.  We can address this at your next chronic care appointment."
*Id.* at 19-20.  Plaintiff asserts that Defendant Brown's and Defendant Haver's written report
on the incident indicated that Plaintiff was observed taking his medication.  *Id.* at 21.
Plaintiff further states that he "was made to endure through his pain and suffering, and take
a clinically proven ineffective medication for Plaintiff's pre-existing and chronic care
condition(s), subjugating mental effects, from 11/26/12 through 12/19/12."  *Id.*

As a result of these allegations, Plaintiff asserts three claims, two of which are
labeled as Eighth Amendment violations and one of which is labeled "Failure to Administer
Adequate Medical [Care]."  *Id.* at 22, 30, 38.  Plaintiff seeks the following relief: (1) a
declaration that the acts/omissions described by Plaintiff violated his constitutional rights;
(2) an injunction ordering Defendant Allred "to stop using the discontinuation of inmates'
meds as a form of punishment, when discontinuation of Plaintiff Hall's prescribed
medication for a serious medical condition, medically diagnosed, whereby, a failure to treat
Plaintiff Hall's condition could result in further significant injury or the 'unnecessary and
wanton infliction of pain,' and reinstate Plaintiff Hall's Gabapentin 3600 mg, and Brown/RN
and Doctor Allred be ordered to discontinue their policies of abuse of
authority/process/discretion by refusing inmate's needed medication to/as punishment, in

regards to violation(s) of Due Process;" (3) $75,000 in compensatory damages "against each defendant jointly and severally;" (4) $50,000 in punitive damages "against each defendant jointly and severally;" and (5) costs of suit. *Id.* at 44-45. Defendants in the present Motion [#55] seek full dismissal of Plaintiff's lawsuit.

## II.  Standard of Review

### A.    Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins.*

*Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 1 2(b)(1) into a motion for summary judgment pursuant to Rule 56.  *Id.*

## B.    Federal Rule of Civil Procedure 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not

do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

#### A.    Sovereign Immunity

Plaintiff sues Defendants in both their individual and official capacities.  *Third Am. Compl.* [#51] at 1.  Regarding Defendants' official capacities, the Court finds that the monetary claims are precluded by sovereign immunity.

Although *Bivens* creates "an implied private action for damages" against federal officers, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001); *see also Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1247 (10th Cir. 1989) (holding that the doctrine of sovereign immunity bars *Bivens* claims against federal officials in their official capacities).  "Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." *Perrill*, 275 F.3d at 963 (citation omitted).  Further, such a suit for damages against the United

-10-

States is barred by sovereign immunity unless immunity has been waived. *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)). Sovereign immunity has not been waived here. *Motion* [#55] at 16-17. Therefore, because the doctrine of sovereign immunity bars *Bivens* actions brought directly against the United States, the Court lacks subject-matter jurisdiction to hear official-capacity *Bivens* claims for damages. *See Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997) (noting that when "the United States retains its sovereign immunity . . . the district court lacks subject matter jurisdiction to hear the suit"); *Perrill*, 275 F.3d at 962 (noting that an "'official capacity *Bivens* suit' would be an oxymoron"). Thus, Plaintiff's *Bivens* claim for monetary damages against Defendants in their official capacities is barred by sovereign immunity, and the Court therefore lacks subject-matter jurisdiction to hear this claim.[5] *See id.*

Accordingly, the Court **recommends** that Plaintiff's claims seeking monetary relief against Defendants in their official capacities and against the United States of America be **dismissed without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

**B.   Declaratory Judgment**

---

[5] Unlike claims for money damages against federal officials in their official capacities, the doctrine of sovereign immunity does not bar Plaintiff's claims against Defendants for injunctive relief from alleged constitutional violations. *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations).

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998).   The DJA explicitly incorporates the case or controversy requirement of the Constitution by stating: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).   The Court therefore considers the issue of jurisdiction pursuant to Rule 12(b)(1) with respect to Plaintiff's requests for declaratory judgment.   *See, e.g.*, *Van Deelen v. Fairchild*, No. 05-2017, 2005 WL 3263885, at *7 (D. Kan. Dec. 1, 2005).

"Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)).   "It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* (citations omitted).   In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Id.*

To establish that a case or controversy exists, Plaintiff must demonstrate that the controversy is: (1) definite, concrete, and touches on the legal relations of the parties, and (2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).   In short, "[t]he

ultimate question is whether declaratory relief will have some effect in the real world." *Van Deelen*, 2005 WL 3263885, at *7 (citing *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).   Further, "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment [.]" *Id.* (citing *Exec. Risk Indem. Inc. v. Sprint Corp.*, 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003)).

Plaintiff seeks a declaration that the acts/omissions described by him throughout the Third Amended Complaint violated his constitutional rights. *Third Am. Compl.* [#51] at 44. The period of Defendants' alleged wrongdoing is finite and in the past, lasting only from November 26, 2012 through December 19, 2012. *Id.* at 21.   The mere fact that Plaintiff's requested relief would give Plaintiff the satisfaction that he was wronged in the past does not create an actual, live controversy.   *Van Deelen*, 2005 WL 3263885, at *7 (citing *Bauchman v. W. High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997) (holding that the case or controversy requirement was not met because the plaintiff's requested declaratory relief was moot)).   However, even if the Court were to grant his request, the declaratory judgment would not "affect[ ] the behavior of [D]efendant[s] toward [P]laintiff," because Defendants would not be required to take any course of action. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).   Plaintiff is seeking a retrospective opinion that these Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment. *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person

was wronged.").

> Even if [P]laintiff demonstrated past constitutional violations, the relief would do nothing more than give [P]laintiff the satisfaction of a declaration that in the past, [D]efendants wronged him. Retrospective declaratory relief would not impact the present or future legal relations of the parties. In this instance, declaratory relief would be hollow and fruitless.

*Van Deelen*, 2005 WL 3263885, at *8.  Thus, Plaintiff's request for declaratory relief must be rejected.

Accordingly, the Court respectfully **recommends** that Plaintiff's request for declaratory relief against all Defendants be **dismissed without prejudice** for lack of subject matter jurisdiction.  *See Brereton*, 434 F.3d at 1216-17.

## C.    Exhaustion of Administrative Remedies

Turning to Defendants' arguments under Fed. R. Civ. P. 12(b)(6), Defendants contend that Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing this action as required by the Prison Litigation Reform Act ("PLRA").  *Motion* [#55] at 18-21; *Response* [#60] at 30-34; *Reply* [#61] at 9-10.  The administrative exhaustion provision of the PLRA provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted); *Woodford v. Ngo*, 548

U.S. 81, 84 (2006) (holding that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner plaintiff is not required to specifically plead that he has exhausted his available administrative remedies or to attach to his complaint exhibits proving exhaustion. *Jones*, 549 U.S. at 216.  Rather, like other affirmative defenses, the burden is on the defendants to assert and prove that the plaintiff did not utilize administrative remedies. *Id.* at 212.  However, "[i]f it is clear on the face of the' complaint that he ha[s] not exhausted his administrative remedies," the Court may address this issue on its own or by motion prior to the summary judgment stage of the case. *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that a court may address exhaustion at the dismissal stage of a lawsuit so long as the incarcerated plaintiff affirmatively states that he did not exhaust his administrative remedies; mere silence in the complaint on this issue will not suffice).

Prison facilities are tasked with the responsibility of establishing administrative review procedures for addressing prisoner grievances. *Jones*, 549 U.S. at 218.  To satisfy the PLRA exhaustion requirement, a prisoner plaintiff "must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* (quoting *Woodford*, 548 U.S. at 88).  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

Moreover, untimely or otherwise procedurally defective administrative grievances are insufficient to satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 83-84.  "[P]roper

exhaustion of administrative remedies is necessary." *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

Here, Plaintiff filed his initial Complaint on December 6, 2012, approximately eleven days after the events underlying this lawsuit began.  This initial Complaint affirmatively stated that Plaintiff had not completed the grievance process. [#1] at 1.  On December 26, 2012, Plaintiff filed an Amended Complaint, in which he again stated that he had not exhausted administrative remedies.  [#13] at 16.  On January 23, 2013, Plaintiff filed a Motion to Stay the Case Until Exhaustion Is Final [#21], in which he asked the Court "to please stay his case . . . until he is finish[ed] exhausting his remedies . . . ," which he expected to occur in late February 2013.  On March 4, 2013, Plaintiff filed a Second Amended Complaint [#26] which failed to state whether his administrative remedies were exhausted.  Finally, on December 16, 2013, Plaintiff filed his Third Amended Complaint, which states that he exhausted his administrative remedies. [#51] at 43.

Plaintiff seeks "leniency" from exhaustion requirements because he has now exhausted his administrative remedies, because he was in pain and sought immediate relief when he initially filed his lawsuit, because he does not want his filing fee for the present lawsuit to be wasted, and because it would be judicially efficient to let his lawsuit proceed rather than start anew with the filing of another lawsuit. *Response* [#60] at 30-34.  However, "[s]ince the PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 F. App'x 862, 863, (10th Cir. Feb. 9, 2012), *cert.*

*denied*, 133 S.Ct. 137 (2012).  Further,  Tenth Circuit precedent makes clear that "even the filing of an amended complaint once exhaustion has been perfected will not cure the pre-filing failure to fully exhaust."  *Horton v. Davis*, No. 12-cv-00349-REB-BNB, 2013 WL 500482, at *2 (D. Colo. Feb. 11, 2013) (citations omitted).

An identical situation presented itself in *Horton v. Davis*, 2013 WL 500482, at *1. There, an incarcerated plaintiff filed his action before the period of appeal on his administrative grievance had elapsed.   The defendants argued that the plaintiff had therefore failed to exhaust his administrative remedies.  The magistrate judge assigned to the matter determined that, because an administrative response had been received and because exhaustion had thus been achieved before the recommendation was issued, the plaintiff's claim was fully exhausted and the defendants' arguments were moot.  The district judge disagreed, stating that, "[t]his is not the law" and that he was "constrained to dismiss" the plaintiff's claim because "nothing short of full exhaustion prior to the filing of suit will suffice."  *Id.* at *2.

"[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse."  *Freeman*, 479 F.3d at 1260 (quoting *Aquilar-Avellaveda*, 478 F.3d at 1225).  Here, there is no dispute that Plaintiff did not exhaust his administrative remedies prior to the filing of his lawsuit, and, despite being on notice of this issue and having had ample opportunity in which to provide a valid excuse, he has failed to do so.  *Response* [#60] at 30-34; *Aquilar-Avellaveda*, 478 F.3d at 1225 (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (noting that a valid excuse might include the situation where, for example, a prison official fails to respond to a grievance within the time limits contained

in the institution's grievance policy)).[6]

The Court therefore **recommends** that Plaintiff's claims be **dismissed without prejudice** for failure to exhaust administrative remedies prior to the filing of his lawsuit. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (stating that dismissal of unexhausted claims should be without prejudice)).

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#55] be **GRANTED** and that Plaintiff's Third Amended Complaint [#51] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review

---

[6] The events underlying this lawsuit began on November 25, 2012. Plaintiff complains that he was not immediately provided with a blank grievance form by prison officials when he requested one on November 26, 2012. *Response* [#60] at 34. However, he alleges that he filed a medical request form on November 27, 2012, that he formally appealed on November 28 and on December 4, 6, and 8, and that he filed a grievance against Defendant Allred on December 13, 2012, thus indicating that any delay in proceeding with the grievance process was minor. *See also Compl.* [#1] at 5 (signed by Plaintiff on December 4, 2012 and filed with the Court on December 6, 2012).

by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: April 29, 2014          BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge